## EGBERT POST, Appellee, v. EVERETT T. FLEMING et al., Appellants.

:SYLLABUS BY THE COURT.

1.  MECHANIC'S LIEN—MINING CLAIMS.—Where a co-owner of a mining claim authorizes his co-owner and others to place mining machinery upon their claims and to do mining thereon, and the foreman in charge of such mining employs laborers to work upon such claims, who perform labor thereon, of which facts such co-owners have notice, and fail to post the notice as provided for in section 2226, C. L. 1897, such laborers are entitled to a lien upon the entire claim or claims, and may file and foreclose a lien for the value of the labor performed thereon.

2.  OWNER'S AGENT.—Under such circumstances, the foreman in charge of the mining done upon such claim, is the agent of the owners thereof, under section 2217, C. L. 1897, notwithstanding such foreman was employed by one of the co-owners.

3.   JOINT LIEN—EFFECT OF.—A lien filed against several mining claims
is not void because the amounts against each claim are not segre-
gated in the lien, but where other liens exist at the time, such lien
is postponed to other valid liens.

*Appeal,* from the District Court of Bernalillo County, Sec-
ond Judicial District.   Affirmed.

Facts are stated in the opinion.

CHILDERS & DOBSON for appellant.

1.   The lien filed by plaintiff was against three mining
claims, and also two Edison Gold Saving machines, and plain-
tiff claims to have performed fifty-two days  and three hours'
labor and work upon all of said mining claims, but does not des-
ignate how much work was done on each of said claims.

Such omission and failure was fatal because in the first
place the statute requires it shall be done, and secondly, be-
cause said mining claims are not all owned by the same per-
sons.   The pleadings and evidence conclusively show that de-
fendant Kent owned no interest in the Slice claim, and neither
did he have any interest in the Edison Gold Saving machines,
and the evidence further establishes the fact that plaintiff
worked upon all three of said mines and also worked several
days upon the gold saving machines.   Section 373, Phillips
on Mechanics' Liens.

"A joint claim can not be filed for materials furnished for
the erection of several houses owned by different persons, al-
though the houses join each other and are built at the same
time.   To make several houses subject to a joint lien would
be a most intolerable grievance to the owners, because the
cost of each might be different; and, with regard to purchasers,
the operation of a joint lien would be very injurious, because
it would not be known what proportion each house was to
bear.   It is said to be extremely difficult for a lumber merchant,
who has furnished materials for several houses built under the
superintendence of one agent, to keep a separate account against
each house, yet there is no reason that he should be exempt
from trouble at the expense of his neighbor.   There is some-

thing so unjust in making one man pay for another's house, that nothing less than clear expressions will warrant it. The course to be adopted is to file separate claims for the proper proportions of material furnished to each building belonging to different owners. Then the building of one owner is not covered by a lien for materials which he has never received, and each party on the trial can have the proportion claimed from him fairly adjusted. So, where two married women owned two contiguous lots and built one house thereon, but so as to furnish each a homestead upon her own lot, a lien attached to each lot for the amount due by each party, and the value of labor and materials on each separate lot could be shown." Roat v. Frear, 31 Atl., p. 61.

"Where a mechanics' lien was filed against 'a double dwelling house' as one building, and the evidence showed the structure to be a block of two buildings, separate from cellar to roof by a brick wall, and without internal connection, the lien was not enforcible." See also Jones on Liens, section 1314, et seq.

We could refer to innumerable decisions supporting the proposition laid down in Phillips on Mechanics' Liens and Jones on Liens, above referred to, but the principle is elementary and we do not deem it necessary.

2. The facts in the case show that Fleming was desirous of purchasing said mining claims, and did purchase certain interests therein from Putney and Strickler; that he was in possession of said property for the purpose of examining the same and testing the said machinery, and that the plaintiff, through Hendershott, had knowledge of such condition of affairs.

In the case of Steele v. Argentine Mining Co., 42 Pac. 585, it is held that "Where in any action to foreclose mechanics' liens, it conclusively appears from the record that credit was given to the party in possession of the property under an option to purchase, and not to the owner of the property, such liens will not, on the failure of the party in possession, and to whom credit was given, to fulfill his contract, and

avail himself of the option, be enforced against the owner or his property."

From the evidence, it is clearly apparent that the plaintiff did not look to Kent for payment of his wages, but that he did look to Fleming, or to Hendershott as the representative of Fleming, who employed him. Attached to the notice of lien is a copy of the statement of account, made out against Everett T. Fleming individually, and evidence further shows that he never presented the bill to the defendant Kent, or made any demand upon him for the payment of his wages.

The case of Jurgenson v. Diller, 46 Pac. 610, is in point, and we take the liberty of quoting from same somewhat at length, for the reason that the statutes of California, upon which they base their right to maintain a lien, is exactly the same as ours.

"Code Civ. Proc., section 1183, giving any person doing work on a mining claim, at the instance of the owner or his agent, a lien thereon for his work, and further providing that any 'person having charge of any mining * * * shall be held to be the agent of the owner,' does not entitle a laborer to a lien for work done for a person whom he knew not to be the owner, and not to be working the mine as representative of the owner."

"It is provided in section 1183, Code Civ. Proc., among various other things relating to the liens of mechanics and others on real property, that any person performing labor on a mining claim shall have a lien thereon for his work, whether done at the instance of the owner or his agent; and 'every contractor, sub-contractor, architect, builder or other person having charge of any mining * * * shall be held to be the agent of the owner for the purposes of this chapter.' It is argued that under this section, Dix was a person in charge of the mining, and hence was the agent of defendant in employing the plaintiff. But the presumption raised by the statute may be repelled. Donohoe v. Mining Co. (Cal.), 45 Pac. 259, 260. The evidence here tended to show that, when plaintiff did the work in question, he knew that Dix did not own the property, and was not working the mine as defendant's

representative; that Dix employed plaintiff on his own account, paid him such wages as were paid at all, and at no time assumed to act on defendant's behalf. Obviously, plaintiff had no just reason to expect payment from defendant, and can not charge a lien upon his mine on any theory of Dix's agency." Jurgenson v. Diller, 46 Pac. 610.

"To authorize a lien there must be an employment by the owner, or his authorized agent. Even under a statute providing that a contractor, subcontractor, architect, builder, or other person having charge of the construction, alteration or repair of any building, shall be considered the agent of the owner, such person is not the statutory agent of the owner, unless he has been employed, directly or indirectly, at the instance of the owner or his authorized agent.

"To sustain a lien under a contract, made by an agent, the burden is upon the claimant to prove the agent's authority." Jones on Liens, Sec. 1238; Baxter v. Hutchings, 49 Ill. 116; Leismann v. Lovely, 45 Wis. 420.

3. The plaintiff is not entitled to a lien upon the mining claims for work performed upon the Edison gold saving machines.

The evidence shows, and the master found, that the plaintiff performed five days' labor upon the gold saving machine, and that he was entitled to $12.50 for such services, being at te rate of $2.50 per day. Jones on Liens, Sec. 1385, says:

"A lien for machinery is not a separate lien. A lien attaches to the entire structure as well as to the land upon which it is situated. A lien for machinery attached to a building, or furnished to be attached, is not a separate lien upon that particular machinery, but a lien upon the whole building and premises, and upon all other fixtures thereon. It does not attach to machinery placed by a mechanic in a building, but to the building, and indirectly only to the machinery when this becomes a part of the building. Though a statute provides that the mechanic 'Shall have for his work or labor done, or materials, fixtures, engine, boiler, or machinery furnished, a lien upon such building, erection and improvement, and upon

the land,' yet there is no lien upon an engine, boiler, or ma-
chinery not permanently connected with the building or land;
there is no lien upon them unless as they are so connected with
the building or realty as to become a part of it, for some per-
manent object, so as to go and pass with the realty as a con-
stitutional part thereof. A carding machine is not a fixture
to a mill to which a mechanic's lien will attach. Such a ma-
chine is not permanently affixed to the realty." Richardson
v. Kock, 81 Mo. 264; Graves v. Pierce, 53 Mo. 423.

4. The decree renders a personal judgment against de-
fendant Kent as well as decreeing the judgment to be a lien
upon his interest in said mine.

No personal judgment could be rendered against defend-
ant Kent as the evidence is uncontradicted that plaintiff did
not look to defendant Kent for pay for his·services, and unless
plaintiff had a right of recovery against defendant Kent for
services rendered, he is not entitled to any personal judgment
in this action. Barber v. Reynolds, 44 Cal. 520.

"In a judgment enforcing a mechanic's lien a personal
judgment can not be rendered against those defendants against
whom no personal claim is established."

Said decree is not in accordance with the master's report,
because it does not specify the amount of lien that the plaintiff
is entitled to against each of said mining claims and the gold
saving machines. The decree directs that said mining claims
and the whole of them, together with the gold saving machines,
be sold to pay the amount of said lien; this is error.

5. The master and the court erred in holding that the
lien of plaintiff was prior and superior to the deed of trust.

Our statute expressly says, that unless the notice of lien
describes the amount due on each "mining claim" such lien
is postponed to other liens.

The lien fails to designate how much was due claimant
for services rendered upon each of said mining claims, or upon
the gold saving machines, and the deed of trust was executed
prior to the filing of plaintiffs' lien.

In conclusion we respectfully submit that the decree en-

tered in this cause should be reversed and said cause remanded with proper instructions to the effect that the plaintiff is not entitled to have or maintain any lien against the interest of the defendant Kent in the Hyde Bar and King placer claims, and we further submit that the plaintiff is not entitled to any lien whatsoever.

FERGUSSON & GILLETT for appellee.

McFIE, J.—This is an action to foreclose a mechanic's lien upon three mining claims, known as the Hyde Bar, King Placer and Slice mining claims, and upon two gold saving machines situated on the Hyde Bar.

The cause was referred to a referee with power to find the facts and also make conclusions of the law therefrom. The referee after the evidence was heard and the arguments of the counsel, found in favor of the plaintiff below, appellee, in this cause, and the court overruled exceptions to the report of the referee and entered final decree in favor of the plaintiff below in the sum of $239.10. The decree also declared the plaintiff entitled to a lien upon all of the property, upon which the lien was sought to be foreclosed and ordered the sale thereof, or so much of said property as was necessary to satisfy the judgment lien of the plaintiff and awarded execution in the event of there being an overplus after the proceeds of such sale had been applied to the judgment. Fred H. Kent alone made defense in the lower court, on his own behalf, and he alone appealed and brought the case to this court for review.

The referee found from the evidence that the plaintiff had been employed by William Hendershott, foreman of the mines and gold saving machines, to labor upon said properties at a stipulated price of two dollars and fifty cents per day, and that Hendershott had full power and authority to employ the plaintiff to labor on said properties. He further found that defendant E. T. Fleming was the owner of the gold saving machines, of the Slice mining claim and a one-third undivided interest in the King Placer and Hyde Bar mining claims,

and that the defendant Kent was the owner of a two-thirds undivided interest in the Hyde Bar and King Placer mining claims at the time the plaintiff was employed to labor thereon and actually performed the labor. The referee further found that the defendant, Kent, had full notice of the employment and knowledge that plaintiff was performing work and labor upon the Hyde Bar and King Placer mining claims, of which the defendant, Kent, was part owner, at the time the work was being done.

The defendant, Kent, testified in the court below that he simply gave his permission to Fleming and others to place the gold saving machines upon the mining claims of which he was in part owner and gave them permission to perform labor thereon with a view to a purchase of his (Kent's) interest in these mining claims and also testified that Mr. Hendershott was not his agent, but that he was the agent of Fleming and others who owned the machines and other claims and that he was not responsible nor was his claim subject to any lien for labor performed on behalf of Fleming and Company. This testimony and this defense was before the referee when he made his findings in this case. This contention was not sustained by the referee nor by the court who passed upon the exceptions to the referee's report and overruled the exceptions thereto.

The first and third assignments of error may be combined, and point out substantially the grounds upon which the appellant seeks a reversal; and are substantially, that the court and master erred in finding as conclusions of facts and law that the defendant, Kent, was responsible to the plaintiff for the work and labor done, and that the defendant (Kent's) interest in said mining claims was subject to the plaintiff's lien and for the satisfaction thereof.

Section 2217 of the Compiled Laws of 1897 provides as follows: "Every person performing labor upon or furnishing materials to be used in the construction, alteration, or repair of any mining claim, building, wharf, bridge, ditch, flume, tunnel, fence, machine, railroad, wagon road or aqueduct to

create hydraulic power, or any other structure, or who performs. labor in any mining claim, has a lien upon the same for the work or labor done, or materials furnished by each respectively, whether done or furnished at the instance of the owner of the building or other improvement, or his agent; and every contractor, subcontractor, architect, builder or other person having charge of any mining claim, or of the construction, alteration or repair either in whole or in part of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purposes of this act."

This section is the law applicable to this case and under which the lien was filed by the plaintiff. This section specifically says that every person performing labor in or upon any mining claim, has a lien upon the mining claim for work or labor done or materials furnished by him whether the labor is performed or materials furnished at the instance of the owner or his agent, and then the statute proceeds to define who shall be considered the agent of the owner for the purposes of this act, and among other things it is declared that any person having charge of any mine shall be considered the agent of the owner, that is any person who may be in charge of the work being performed upon a mine shall be considered the agent of the owner with power to employ laborers, and that such employment will subject the claims to the lien provided for by the statute. This is a very sweeping provision, but it is undoubtedly the law of this Territory, and a laborer has a right to rely upon the employment of such person and to assert a lien under such employment. In this case the defendant, Kent, insisted that Mr. Hendershott was not employed by him and was not his authorized agent to employ the plaintiff; that he was the agent of Fleming and Company, but at the same time admitted that he gave permission to Fleming and Company to place upon the mining claims in which he owned an interest gold saving machines and gave the permission to do acts of mining thereon

*Mechanic's lien: mining claims.*

for the purpose of testing their machines upon the ores of
these claims and for the purpose of ascertaining the value of
the ores with a view to the purchase of the claims by Fleming
and Company, thus disclosing the interest that the defendant,
Kent, had in the mining operation of Fleming and Company.

The master, in addition to this, finds that Kent had notice
of the employment of the plaintiff by Hendershott, who was in
charge of the mining being done upon these claims, and also
that he had notice that the work was being performed upon
these claims, of which he was a part owner, by the plaintiff.
These findings by the master were sustained by the court
below and properly sustained, because the evidence shows that
defendant Kent was there in person upon the mining claims
while the plaintiff was laboring there, saw the work being
done and took meals with Fleming and others; that even if it
was an open question, the finding of the referee is sustained
upon that point by the evidence; but the finding of the master,
sustained as it is by the court below, is conclusive in this
court as to the fact that the defendant, Kent, had knowledge
that the plaintiff had been employed to labor upon the mines
in which he was part owner, and that he actually did perform
labor upon these mines. The defendant is supposed' to know
the law which declares that a person in charge of work being
done upon a mining claim is the agent of the owner for the
purpose of the enforcement of the lien law. The fact that he
did not employ him is immaterial, because the statute declares
that the person in charge of the mining operations with the
owner's knowledge shall be the agent of the owner.

The defendant, Kent, being thus charged with notice of
the fact that the labor was being done by the plaintiff
upon the mining claims of which he was the owner in part,
was chargeable also with the knowledge that the labor thus
performed would entitle the laborer to a lien for the value of
the labor. It, therefore, became his duty to protect his in-
terest in these claims against the lien which would undoubtedly
attach under the employment of Hendershott, notwithstand-
ing the fact that Hendershott had not been employed to act
as his agent.

The law makes specific provision for the protection of a mine owner in such cases. Section 2226 of the Compiled Laws was enacted for the purpose of protecting owners of mining claims having notice that the labor is being performed upon their claims by and for the benefit of others, and it is a simple and complete remedy that is provided by this section. Section 2226 reads as follows: "Every building or other improvement mentioned in section two thousand two hundred and seventeen, constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or persons having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this act unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration or repair, or the intended construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to the effect, in some conspicuous place upon said land, or upon the building or other improvements situated thereon."

Owner's right.

It will be seen from this section that the responsibility is devolved upon the owner, or part owner, of mining claims and other properties subject to lien, to protect their interests by an affirmative act, that is, by posting a written notice in a conspicuous place upon the claims within three days after they obtain notice of labor being performed upon such claims as would authorize a lien thereon. This provision of law the defendant, Kent, was subject to, and it was a complete remedy for him by which to protect his interest. But the record shows that no such notice was posted or given; therefore, the statutory remedy was not invoked by the defendant, Kent, after he obtained knowledge that labor was being performed by the plaintiff, and the statute makes no other provisions for the protection of mine owners under such circum-

stances except the provisions to which we have just referred, nor do we know of any provision that exempts any owner of a mining claim from the duty of giving the statutory notice. The plaintiff under the law of this Territory was authorized to look to the owner of the mining claim for satisfaction of his claim where the owner has knowledge that he is performing labor and has a right to invoke the lien law to secure satisfaction of the amount due him, unless the owner shall post a notice as required by law. There was no error, therefore, in the finding of the master and the court below as to the right of the plaintiff to a lien upon the mining claims of which the defendant, Kent, was a part owner, nor as to the responsibility of Kent's interests for satisfaction of the debt and the lien.

Another error assigned is "That the court and master erred in admitting the lien filed by the plaintiff in evidence, because the same seeks to charge other mining claims with the lien for work and labor performed, but does not specify how much work and labor was done upon each of said claims separately." It appears from the record and the findings of the referee and the court below, that the lien itself did not specify the exact amount of labor performed by the plaintiff upon each of the respective claims, but the complaint alleges and the proof shows the amount due upon each claim, and the court below ascertained and declared the amount due upon each. The error assigned as to this is not well taken, because it was perfectly proper to admit the lien filed in evidence. It was part of the plaintiff's case and the failure to segregate the amounts due on each of the separate tracts of property does not invalidate the lien. Section 2222 provides that, "In every case in which one claim is filed against two or more buildings, mining claims or other improvements owned by the same person, the person filing such claim must at the time designate the amount due to him on each of such buildings, mining claims or other improvements, otherwise the lien of such claim is postponed to other liens. The lien of such claim does not extend beyond the amount desig-

nated, as against other creditors having liens by judgment, mortgage or otherwise upon either of such buildings or other improvements or upon the land upon which the same are situated."

This section of the statute does not ·declare a lien void where the amounts are not segregated, but does provide that if there are other liens upon the property at the time, unless the amounts upon each claim is segregated, the lien will be postponed to other liens. In this case, so far as the record shows, there were no other liens upon the property of defendant Kent. The trust deed introduced in evidence here has no relation to the interest of Kent, but was given by Fleming and upon the interest of Fleming and Company alone, in the property involved in this suit, so that it would seem that the defendant, Kent, has no right to raise this objection inasmuch as it can not in any way affect his rights in the premises, unless this deed of· trust was accepted by the plaintiff in lieu of and as a waiver of the lien.

Counsel for defendant Kent insist that the deed of trust was introduced in evidence for the purpose of establishing this fact. In behalf of the defendant there is no other proof than the instrument itself. The plaintiff, however, testified, and the referee found as a fact, that the plaintiff was not a party to, and had no knowledge of the execution of the deed of trust introduced in evidence until it was recorded in the office of the probate clerk of Bernalillo county, New Mexico, and that said information was only gained from newspaper report. A reference to the deed of trust shows that there is no certificate as to the time it was recorded. The deed of trust was given by Everett T. Fleming to Wallace Hesselden, who was made party of the second part for the payment of numerous claims enumerated therein, among which was the claim of the plaintiff. It would thus appear to have been a voluntary instrument on the part of Fleming and would in no way bind the plaintiff unless the terms of the deed of trust were accepted by him in lieu of and as a waiver of the lien. In view of the finding of the facts in this case, there was no waiver of the lien in

the case nor intention to do so, as the plaintiff testified he knew nothing of the execution of this deed of trust except from newspaper report and this information came to him after the instrument was recorded. The labor was performed between the 23rd day of May and the 15th day of August, 1897. The deed of trust bears date of 23rd day of August, 1897. The lien was filed on the 28th day of August, 1897, which fact sustains the finding of the facts by the court and referee, as it is not to be presumed that the plaintiff would file a lien after he had accepted collateral security in lieu and as a waiver thereof. We must conclude, therefore, that there was no waiver of the lien by reason of the execution of the deed of trust, and the error assigned thereon is not well assigned.

The defendant also urges as error, that the entire property should not have been ordered sold because there was no proof taken that the sale of the entire property was necessary. The provision of law in regard to the quantity of land to be sold on foreclosure is, in our opinion, not applicable to a mining claim upon which no building or improvements of that nature have been erected, but, however that may be, this objection is not available to the defendant, because if he desired to limit the quantity of the land sold, upon the ground that the sale of all was unnecessary he had a right to do so in the lower court at the time the testimony was produced in his favor. Not having introduced any testimony tending to show that only a portion of the claim should be sold in the event of foreclosure, he can not be heard to insist that there was no proof in the court below showing that it was necessary to sell the entire property, and a decree ordering the sale of the entire property, or so much thereof as may be necessary to satisfy the lien, is a proper decree in such case. The decree in this case does so provide and is, therefore, unobjectionable.

From the above conclusions it is unnecessary for us to

JOINT lien: effect of.

further examine the record in this case, and finding no error in the record, the judgment of the court below is affirmed with costs.

Mills, C. J., and Parker, J., concur.

---

[864. August 23, 1900.]

CHILDERS & DOBSON for appellants.

FERGUSSON & GILLETT for appellee.