This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                 **No. A-1-CA-35044**

**LORENZO ALONZO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Laurie Blevins, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}    Defendant appeals his convictions for resisting, evading, obstructing an officer (resisting), and two counts of battery on a peace officer. On appeal, Defendant claims that: (1) the evidence was insufficient to support his convictions; (2) he was entitled to an instruction on simple battery; (3) his conviction for resisting an officer should be vacated based on double jeopardy violations; (4) the district court erred in allowing testimony and questioning about prior and subsequent bad acts by Defendant; and (5) he received ineffective assistance from his trial counsel. We affirm Defendant's convictions.

{2}    Because this is a memorandum opinion and the parties are familiar with the facts and procedural background of the case, we reserve discussion of the pertinent facts for our analysis.

**DISCUSSION**

**A.    Sufficiency of the Evidence**

{3}    Defendant argues that the evidence was insufficient to support his conviction for resisting or abusing an officer, as well as his convictions for battery on a peace officer. *See* NMSA 1978, § 30-22-1(D) (1981) (providing that resisting, evading, or obstructing an officer consists of "resisting or abusing any . . . peace officer in the lawful discharge of his [or her] duties"); NMSA 1978, § 30-22-24 (1971) (providing that battery on a peace officer involves the unlawful, intentional touching or

application of force to the peace officer while in the lawful discharge of his or her duties, when done in a rude, insolent, or angry manner). Defendant also argues that he was entitled to a simple battery instruction. For both of these issues, Defendant argues that the officers were not acting within the lawful discharge of their duties because they had no reason to forcibly detain him. We disagree.

**1.    Officers Were Acting Within Lawful Discharge of Their Duties**

{4}    Police officers responded to two separate calls. All of the responding officers were in uniform, displaying their badges, and driving marked police cars. The first call was based on a report that a male and female were observed arguing in a car; the male exited the car and appeared to be bleeding. Officer Ryan Rodriguez learned that the male seemed to have sustained an injury in a physical altercation, and had a noticeable amount of blood on his face. Officer Rodriguez could not locate the male subject, but encountered a female who had seen the male and described where he was headed. Officer Rodriguez also spoke with a second person who had witnessed the altercation between the male and female and had observed blood on the face of the male.

{5}    Around ten minutes after the first dispatch, the officers received the second dispatch concerning an unwanted male. The description of the male matched the description from the first caller. Officer Rodriguez found the male, who turned out to be Defendant, sitting on the property of the second caller's residence. Upon seeing the

3

officer, Defendant stood up and walked away while using obscene gestures and language toward the officer. Defendant appeared agitated and sweaty, and had a noticeable amount of blood on a substantial part of his face. Officer Rodriguez spoke with the second caller who told him that Defendant had banged on her door wanting to use the phone. After speaking with the resident, Officer Rodriguez searched for Defendant and found him walking in an alley. Defendant entered a backyard of a residence and emerged on the other side, between two houses.

{6}     Lieutenant Tommy Barnett observed Defendant coming from between the two houses, and gave several commands for him to stop. Defendant responded with rude gestures and comments, and increased his walking speed. When Defendant continued to refuse to comply with his commands, Lieutenant Barnett used an arm bar maneuver to take Defendant to the ground. When Officer Albert Castillo arrived on the scene, Lieutenant Barnett stood up from his kneeling position in order to allow Officer Castillo to help with Defendant. Defendant fought to the point that Lieutenant Barnett and Officers Castillo and Rodriguez were struggling to subdue Defendant, who was thrashing, kicking, and cursing. In the process, Defendant directed separate kicks at Lieutenant Barnett and Officer Castillo.

{7}     The fact that Defendant had a substantial amount of blood on his face, and based on Defendant's demeanor, appearance, and behavior, the officers had a

4

reasonable belief that Defendant was involved in an altercation, in some capacity. Thus, the officers had the right to investigate the cause of Defendant's injury. This included the possibility that he was the victim or perpetrator of a battery or other crime. *See State v. Ryon*, 2005-NMSC-005, ¶ 25, 137 N.M. 174, 108 P.3d 1032 (describing the "community caretaker exception" as broad and encompassing situations, where the officers' actions are motivated by "a desire to aid victims" (internal quotation marks and citation omitted)); *State v. Fairres*, 2003-NMCA-152, ¶ 8, 134 N.M. 668, 81 P.3d 611 (stating that the officer may detain a person to investigate possible criminal activity "based on reasonable suspicion that a crime is being or has been committed"). Based on the possibility that Defendant was involved in a criminal activity in some capacity, whether as a victim or perpetrator, the officers had the right to approach him and command him to stop. *See Fairres*, 2003-NMCA-152, ¶ 8 (stating that "reasonable suspicion is subject to an objective test based upon specific articulable facts and reasonable inferences from those facts").

**{8}** Defendant claims that the officers did not express "real concern" for his safety, and they did not believe Defendant committed a crime. Contrary to Defendant's claim, Officer Rodriguez stated that they were investigating the incident in response to the information from the first call to police and conducting a welfare check. Nevertheless, what the officers expressed or did not express is not dispositive, because in

determining whether there are grounds for reasonable suspicion or for application of the community caretaker exception, we apply an objective test. *See State v. Hubble*, 2009-NMSC-014, ¶ 23, 146 N.M. 70, 206 P.3d 579; *Ryon*, 2005-NMSC-005, ¶ 30.

**{9}** Defendant claims that the facts in this case are similar to those in *State v. Frazier*, 1975-NMCA-074, 88 N.M. 103, 537 P.2d 711, because the defendant in that case was not suspected of committing any crime. We disagree. In *Frazier*, officers were called about a non-violent dispute between a motel manager and a guest over an unpaid motel bill. There was nothing that even suggested the commission of a criminal offense. *Id.* ¶¶ 4-6. In this case, officers were called to investigate reports of a fight in a vehicle, a bloodied male who exited the vehicle, and a bloodied male who had banged on a nearby resident's door, all of which suggested the possibility of criminal behavior.

**{10}** Defendant cites to *State v. Phillips*, 2009-NMCA-021, 145 N.M. 615, 203 P.3d 146, for the proposition that punishment for resisting an officer is authorized only if the officers had probable cause to seize him. Defendant argues that the officers neither articulated concern for Defendant's safety nor did they have reason to believe he was a perpetrator of any crime. Defendant's reliance on *Phillips* is misplaced. One critical distinguishing fact from this case is the officer in *Phillips* mistakenly relied on a repealed statute that had given him authority to transport an intoxicated person to his

home when he took the defendant into protective custody. *See id.* ¶ 22. In clarifying recent appellate decisions interpreting the phrase "lawful discharge of his duties," the word "lawful" and our Supreme Court's abrogation of the privilege to forcibly resist an illegal search or seizure, the *Phillips* court discussion noted that where an officer lacks the actual legal authority to place a defendant in protective custody and the defendant resists seizure, the defendant may be convicted only of a simple battery misdemeanor. *Id.* ¶¶ 17-19 (internal quotation marks and citation omitted). *Phillips* further noted that the lawful authority requirement was in keeping with the Legislature's clearly expressed intent to justify a felony conviction for battery on a peace officer. *See id.* ¶ 19. This discussion in *Phillips* is not controlling authority because it was not necessary to the disposition in that case. *Phillips* found that the officer acted in the lawful discharge of his duties, and affirmed the defendant's conviction. *See id.* ¶¶ 23-24. "It is obvious that this statement, since it was unnecessary to [the] decision of the issue before the Court, was dictum, no matter how deliberately or emphatically phrased." Dictum is not a controlling authority. *Ruggles v. Ruggles*, 1993-NMSC-043, ¶ 22 n.8, 116 N.M. 52, 860 P.2d 182.

{11}     Based on the facts of this case, we hold that the officers were acting within the lawful discharge of their duties for purposes of Defendant's convictions for resisting an officer and battery on a peace officer.

## 2.   Standard of Review

{12}   "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

## 3.   Resisting an Officer

{13}   Defendant claims that the evidence was insufficient to support his conviction for resisting an officer, which consists of "resisting or abusing any . . . peace officer in the lawful discharge of his [or her] duties." Section 30-22-1(D). Since we have already determined that the officers in this case were acting within the lawful discharge of their duties, we are left to decide whether there was sufficient evidence to support the jury's determination that Defendant resisted or abused any peace officer.

8

{14} Here, the officers had their badges displayed, were in uniform, and were driving patrol cars. Officer Rodriguez ordered Defendant to stop, but he refused and walked away. While leaving, he directed profanity and rude gestures toward the officer. When Lieutenant Barnett later encountered Defendant, he gave several commands to stop, which Defendant ignored. Defendant knew it was wrong to defy the officers' orders. We hold that the evidence was sufficient to support Defendant's conviction for resisting or abusing an officer.

**4.      Battery on a Peace Officer**

{15} Defendant was convicted of two counts of battery on a peace officer involving Lieutenant Barnett and Officer Castillo, which consists of the "unlawful, intentional touching or application of force to the . . . peace officer while he is in the lawful discharge of his [or her] duties, when done in a rude, insolent or angry manner." Section 30-22-24. Punishment for battery on a peace officer is warranted only if the battery rises to the level of an actual injury, an actual threat to the officer's safety, or a meaningful challenge to the officer's authority. *See State v. Padilla*, 1997-NMSC-022, ¶ 7, 123 N.M. 216, 937 P.2d 492.

{16} Again, we have determined that the officers were acting in the lawful discharge of their duties, therefore our attention is focused on Defendant's actions. Defendant does not claim that his actions in kicking the officers did not involve unlawful

9

application of force, or that he did not kick the officers in a rude, insolent, or angry manner. Instead, Defendant argues that kicking the officers did not meet the requirement under *Padilla* that the actions result in a meaningful challenge to the officers' authority.

{17} Defendant contends that there is no meaningful method of evaluation for determining what constitutes a "meaningful challenge to authority." Defendant suggests that we determine whether or not his actions caused "some actual impact on the officer's ability to control or command the situation or carry out his duties." Parties in other cases have similarly urged this Court to provide boundaries for determining the "meaningful challenge to authority." *State v. Martinez*, 2002-NMCA-036, ¶ 38, 131 N.M. 746, 42 P.3d 851; *State v. Jones*, 2000-NMCA-047, ¶ 14, 129 N.M. 165, 3 P.3d 142. This Court has declined to do so, and we have pointed out that juries must make that determination based on the circumstances and context in which the battery occurred to decide if the contact was merely offensive, or whether it rose to the level of unlawfulness. *See Jones*, 2000-NMCA-047, ¶¶ 10, 14. On appeal, we must determine whether there was sufficient evidence for the jury to decide that Defendant's actions constituted a meaningful challenge to the officers' authority.

{18} Here, Lieutenant Barnett and Officer Castillo were in the process of conducting a welfare check, and investigating the report of a fight in a vehicle and a man with a

10

bloodied head exiting the vehicle. When the officers were exercising their authority by attempting to subdue Defendant, he struggled and fought them. At one point, Defendant kicked Lieutenant Barnett, and at another point, kicked Officer Castillo. Each time, his conduct indicated that the kicks were deliberately aimed at the officers. When kicking Lieutenant Barnett, he leaned onto his shoulder, drew his leg back and kicked. Before he kicked Officer Castillo, Defendant took a moment to locate the officer's position.

{19} Viewing the evidence in the light most favorable to the verdict, Defendant's kicks in his attempt to free himself were not merely offensive. Defendant's conduct was unlawful and constituted a meaningful challenge to the officers' authority. We hold that there was sufficient evidence to support both of Defendant's convictions for battery on a peace officer.

**B.     A Simple Battery Instruction Was Not Appropriate**

{20} We also reject Defendant's claim of entitlement to a lesser-included instruction for simple battery. Simple battery is a lesser-included offense to battery on a peace officer. *State v. Kraul*, 1977-NMCA-032, ¶¶ 13, 15, 90 N.M. 314, 563 P.2d 108. "Battery on a peace officer differs from simple battery, by including an additional requirement that the victim have been a peace officer while he [or she] is in the lawful discharge of his [or her] duties." *Phillips*, 2009-NMCA-021, ¶ 10 (internal quotation

11

marks and citation omitted). Our determination that Lieutenant Barnett and Officers Rodriguez and Castillo were in the lawful discharge of their duties automatically excludes any consideration of a simple battery instruction. *See, e.g.*, *State v. Melendrez*, 1977-NMCA-131, ¶ 19, 91 N.M. 259, 572 P.2d 1267.

**C.      No Violation of Double Jeopardy**

{21}      Defendant argues that his convictions for battery on a peace officer and resisting arrest constitute double jeopardy and asks this Court to vacate his conviction for resisting an officer. Defendant claims that, while the three officers were subduing him, his "resisting behavior" and his "kicking" of the two officers was unitary. As noted by Defendant, we must first determine whether the conduct underlying the offenses of resisting an officer and battery on a peace officer is unitary. *See State v. Lopez*, 2008-NMCA-111, ¶ 9, 144 N.M. 705, 191 P.3d 563. In order to decide that question, we look at whether the two events were sufficiently separated by space or time, and whether the nature of the acts can be distinguished. *See id.*

{22}      Officer Rodriguez found Defendant at the home of the second caller. When Officer Rodriguez asked to speak to him, Defendant got up and walked away. Despite commands to stop, Defendant kept walking away. After the Officer spoke with the resident, he left in his vehicle to find Defendant. After locating Defendant in an alley, Officer Rodriguez called out but received no response. When Defendant emerged

12

from between two houses, Lieutenant Barnett commanded Defendant to stop, but again Defendant refused. During the struggle to subdue Defendant, the officers were kicked by Defendant.

{23} After Defendant was first located and ignored Officer Rodriguez's commands to stop, there was some passage of time during which Officer Rodriguez spoke with the homeowner and Defendant walked to another location. Lieutenant Barnett encountered Defendant emerging from between two houses at a completely different location. At that time, Defendant was again commanded to stop, but he refused, and the officers attempted to forcibly detain him. Defendant's refusal to stop after ordered to do so by Officer Rodriguez was separated by time and space from the struggle to subdue him. Furthermore, his refusal to obey Lieutenant Barnett's command to stop was separated by time and space from the struggle to subdue Defendant. Therefore, Defendant's conduct was not unitary, and his convictions do not violate double jeopardy.

**D.    Prior and Subsequent Bad Acts**

{24} Defendant argues that the district court erred in allowing the State to question Defendant regarding prior and subsequent bad acts. Defendant does not provide specific factual information in support of this claim other than a statement that, during his testimony, he explained that "he had committed prior offenses." Although defense

13

counsel did not object, Defendant claims that the failure by the district court to stop him from testifying at that point amounted to plain error.

{25}     This Court is given no information in support of the accusation that the State was allowed to question Defendant regarding prior and subsequent bad acts. This Court is under no obligation to review unclear or undeveloped arguments. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031; *State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that this Court will "not review unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be"). We decline to address Defendant's argument.

{26}     Notably, the State provides us with citations to the record and specific information about Defendant's testimony, and it is clear that any comments that may have concerned prior or subsequent bad acts by Defendant were actually volunteered by him on direct examination. *See State v. Reynolds*, 1990-NMCA-122, ¶ 20, 111 N.M. 263, 804 P.2d 1082 ("A party cannot complain of prejudice possibly resulting from a situation[,] which he created by his own remarks during the course of the trial." (internal quotation marks and citation omitted)).

**E.     Ineffective Assistance of Counsel**

{27}     Defendant contends that his trial counsel was ineffective. Defendant argues that his counsel did not object to questions regarding gang affiliation, but instead persisted

in questioning the officers about the matter. Defendant also contends that his counsel was ineffective in failing to call a polygraph expert to support Defendant's claim that the officers were untruthful in stating that they did not handcuff his ankles, which would have also supported his claim that he could not have kicked the officers.

{28} Defense counsel's performance is deficient if his or her conduct falls below that of a reasonably competent attorney. *See State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107, 163 P.3d 494. "We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (internal quotation marks and citation omitted). Although Defendant claims that his counsel should have objected to certain questions, the decision to object or not object is "a matter of trial tactics." *State v. Jacobs*, 2000-NMSC-026, ¶ 49, 129 N.M. 448, 10 P.3d 127. In addition, Defendant cannot claim that his case was prejudiced unless, as a result of his counsel's performance, "there was a reasonable probability that the result of the trial would have been different." *State v. Dylan J.*, 2009-NMCA-027, ¶ 38, 145 N.M.719, 204 P.3d 44 (omission, internal quotation marks, and citation omitted). Other than favorable generalized statements that a polygraph expert would have supported Defendant's

claims that the officers were untruthful, Defendant does not provide any factual or legal authority to support his contention that his attorney's failure to call a polygraph expert would amount to ineffective assistance of counsel. This Court will not address Defendant's undeveloped argument. *See Fuentes*, 2010-NMCA-027, ¶ 29 (explaining that this Court does not review unclear or undeveloped arguments that would require this Court to guess at what the party's argument might be).

**{29}** We have previously expressed a preference for habeas corpus proceedings over remand in cases where the record does not demonstrate a prima facie case of ineffective assistance of counsel. *See State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31. In this case, we have determined that Defendant has failed to present a prima facie case of ineffective assistance of counsel, and therefore, we reject his claim. However, our decision does not preclude Defendant from pursuing post-conviction relief to which he may be entitled.

**CONCLUSION**

**{30}** Based on the forgoing, we affirm Defendant's convictions.

**{31}** **IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

16

_____

**MICHAEL E. VIGIL, Judge**


_____

**JULIE J. VARGAS, Judge**