262 P.2d 370

**SKIDMORE et al. v. EBY et al.**
No. 5582.

Supreme Court of New Mexico.
Oct. 20, 1953.

Hubert O. Robertson, Silver City, H. Vearle Payne, Lordsburg, for appellants.

J. R. Wrinkle, Silver City, for appellees.

BRAND, District Judge.

Suit was brought by Cowan Lumber Company to foreclose a materialman's lien against property owned by the defendant, Eby, the lumber company having furnished building materials for the construction of a residence on his land. Imboden and Parks were made defendants, since the materials were ordered by and charged to them, they having been the contractors erecting the structure for Eby.

The defendant, Eby, a rancher living at Faywood, New Mexico, decided to build a home at Silver City. On March 12, 1946, he entered into a contract with Imboden, Parks, and one B. B. Smith, whereby the contractors agreed to furnish all material and labor for a six-room house with two baths, according to plans and specifications, for the sum of $11,140. In the contract was an unusual provision to the effect that Eby was to advance contractors $2,000 at the time of signing the agreement. Imboden and Parks had been making concrete blocks and had applied for a contractor's license, which had not then been obtained, and Smith executed the contract with them to lend validity to the transaction, since he did have a contractor's license. By June 26, 1946, however, the contractors had ceased work on the house due to lack of funds or credit with which to proceed, and Eby went into a second contract, with Imboden and Parks only, having induced them to go ahead with the job, and advanced them $500 with which to purchase materials. It was distinctly agreed that the second contract in no way altered the original one except as to such advancement. In February, 1947, Imboden and Parks severed relations and Imboden attempted to carry on the work alone, but prior to December 12, 1947, again suspended operations and left Silver City to obtain employment. He was again, however, persuaded by Eby to return and resume work on the building and a third

agreement was then executed between the two. It recited, among other things, that more than eighteen months had elapsed since the original contract and that the dwelling had not been completed and that differences had arisen as to the amount due Imboden. Certain extras and alterations were incorporated in this contract, the payments to contractor being raised to cover such items, and Imboden agreed to complete the house on or before January 26, 1948, and further bound himself to hold Eby harmless from any and all bills and accounts for materials and labor expended. It was again provided that all of the provisions of the original contract of March 12, 1946, should remain in force and effect except as changed by this one. Imboden substantially completed the house in December, 1948, having been delayed further by his financial difficulties. During the entire period of construction, almost all of the materials used had been purchased from plaintiff, partially on order from Eby and partially by Imboden, and charged, some to Eby and some to Imboden. A lien was filed by the lumber company against the Eby property in January, 1949, for materials furnished the contractors between May, 1947, and November, 1948, and for which Eby refused to pay.

At the time of making the second contract, Eby posted on the premises the statutory notice of non-liability, and the Court found that he had informed Mr. Skidmore, partner in the Cowan Lumber Company, at that time, that he was not to be charged thereafter with any materials delivered to Imboden and Parks unless authorized by him to do so, and that in the event he delivered materials without such authority, the lumber company would have to look to the contractors for payment. It is admitted that the charges included in the lien were for materials sold and delivered to the contractors for the Eby job after the notice was posted and the verbal instructions given, and there is no controversy over the amounts charged in the lien or that the materials were used in the construction. The items forming the basis of the lien were not ordered or authorized by Eby, and, altogether, Eby paid to the contractors and their material furnishers and laborers an amount in excess of the contract price. The Court found that the notice of non-liability was properly and timely posted and served to protect the owner against the attachment of the lien; that the delivery of the materials by the lumber company which had not been authorized by the owner relieved him of responsibility to pay therefor and gave it no right to a lien upon the property; that there existed a contract between the owner and the lumber company whereby the owner was not bound to pay for materials unless expressly ordered or the delivery thereof authorized by him; that the contractors had breached their agreement with the owner on or be-

fore the date of the execution of the third contract (December 12, 1947) and that this constituted an abandonment or termination of the contract equivalent to completion of the structure, so as to start the running of the period in which liens could be filed; that since the lien was not filed within 120 days thereafter, it was filed too late. The complaint was therefore dismissed and this appeal followed.

Appellants, plaintiffs below, attack the judgment under five points, which will be considered in order, the first being that the posting of a notice of non-liability by an owner of land who has contracted for the erection of a structure thereon is ineffective to prevent the attachment of liens for materials sold the contractor for use in the improvement. 36 Am.Jur., Mechanic's Liens, Sec. 121, p. 87 states:

"*Who May Invoke Protection of Statute.*—An owner of land who employs a building contractor to erect improvements thereupon cannot, by posting a notice of nonresponsibility, prevent the attachment of a lien against the land in favor of laborers or materialmen employed by the contractor.",

and the text goes on to say, that only in Oregon have the Courts apparently limited this principle, citing 123 A.L.R. 36. Our pertinent statutes read:

N.M.Stat.1941 Annotated. "63-202. *Labor and materials furnished—Liens —Definition of agent of owner.—*

Every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of any mining claim, building, wharf, bridge, ditch, flume, tunnel, fence, machinery, railroad, wagon road or aqueduct to create hydraulic power, or any other structure, or who performs labor in any mining claim, has a lien upon the same for the work or labor done or materials furnished by each respectively, whether done or furnished at the instance of the owner of the building or other improvement, or his agent, and every contractor, subcontractor, architect, builder, or other person having charge of any mining, or of the construction, alteration or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purposes of this article."

"63-210. *Construction with knowledge of owner subjects land to lien— Notice by owner of non-responsibility.*—Every building or other improvement mentioned in the second section of this article (§ 63-202), constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and the interest owned or claimed shall be

subject to any lien filed in accordance with the provisions of this article, unless such owner or person having or claiming an interest therein shall, within three (3) days after he shall have obtained knowledge of the construction, alteration or repair, or the intended construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to the effect, in some conspicuous place upon said land, or upon the building or other improvement situated thereon."

In 57 C.J.S., Mechanics' Liens, § 84, p. 591, it is stated that the statutes under consideration apply to a person who has not authorized the improvement or caused it to be made but who has knowledge of the making of the improvement and is the owner of the legal title to or has an interest in the land otherwise than as a lienor or incumbrancer; that they do not apply to a person who caused the building to be constructed or who contracted for the improvements, directly or indirectly, and that in such case the interest of such person is liable to a lien under other statutes, and he cannot relieve such interest from liability by giving a statutory notice that he will not be responsible.

In Artic Lumber Co. v. Borden, 9 Cir., 211 F. 50, 54, the owner of land had leased his property under a contract whereby the lessee was obliged to construct a building. The lessee was held to be a contractor and therefore agent of the owner. The owner posted a notice of non-responsibility but the Court held against him and said:

" * * * The provisions of Section 265 are for the benefit and protection of the owner in cases where the work is not done and the material is not furnished at his instance, or at the instance of his agent. It is not the intention of the law, nor is it the purport thereof, that when in fact the work is done, and the material furnished at the owner's instance, he may prevent a lien upon his property by posting the notice referred to in that statute."

Construing with Sec. 2221, Nevada Rev. Laws, 1912 (substantially the same as Sec. 1192 of the California Code of Civil Procedure 1941), Sec. 2213, which provided that every person performing labor upon or furnishing materials to be used in the improvement of real property, whether at the instance of the owner or of his agent, should be entitled to a lien thereon, every contractor, subcontractor, builder, or architect in charge of such an improvement to be considered as the agent of the owner, the Court in Verdi Lumber Co. v. Bartlett, 1916, 40 Nev. 317, 161 P. 933, 934, held that plaintiff, which furnished materials to the general contractor employed by defendant to make certain alterations and additions to a building on land owned by him, was entitled to a lien against the land, al-

though defendant posted a notice of non-responsibility which complied with Sec. 2221. It was said:

"If the language of section 2213, supra, is given its plain meaning, and if the principal is as much bound by the acts of his agent as if he had acted for himself, how can the mere posting of a notice, such as contemplated in section 2221, supra, by the owner of the property, relieve him of liability under circumstances such as are presented in the case at bar? To sustain appellants' contention, we must hold that in so far as the circumstances of this case are concerned, so much of section 2213, supra, as provides that the contractor, etc., is the agent of the owner is repealed by section 2221, supra. Courts do not favor any such consequence where it can be avoided, but rather seek to so harmonize the different parts of acts, and different acts which are in pari materia, as to enable them all to stand. We are convinced that the legislature never intended by section 2221 to convey any such idea as contended for by appellants, for if it did, we would have the absurd situation of an owner of property being able to order supplies, directly or through a duly authorized agent, procure their delivery, and then, pursuant to the preconceived plan, post a non-liability notice and escape lia-

bility therefor. It ought to require no argument to refute such a preposterous contention."

And in our own court, in Albuquerque Lumber Co. v. Montevista Co., 39 N.M. 6, 38 P.2d 77, 78, Justice Sadler, now the Chief Justice of this Court, used the following language in interpreting the statute in question:

"This statute appears as section 11 of chapter 16 of the Session Laws of 1880, the original Mechanics' Lien Act. It furnishes an easy means whereby the owner of property *in possession of another under tenancies, purchase contracts, or otherwise may, after knowledge that such other has commenced repairs, alterations, or improvements,* relieve his (the owner's) estate in the premises from liability therefor by posting in some conspicuous place on the premises or improvements a notice of nonliability. In default of such posting, the statute declares the improvements or repairs 'shall be held to have been constructed at the instance of such owner,' and his interest 'shall be subject to any lien filed' in accordance with the provisions of said act." (Emphasis ours.)

In the case, a mechanic's lien claimant knew that its customer was merely an executory purchaser in possession, with ownership of the legal title in the vendor, but it was held that this knowledge did not de-

ny the effect of the vendor's failure to post the notice of non-liability. Appellee cites this case and quotes from other parts of the opinion to the effect that—

"The statute does no more than to furnish a rule of evidence whereby the owner's consent or acquiescence may be determined",

and

"The basis of the presumption raised by the statute is equitable estoppel",

but we fail to see how these extracts support the defense. Since the owner of the property could have relieved the same from liens by posting a notice, the land being in the possession of the person who was erecting the structure thereon for himself, and who had contracted to purchase the land, the converse follows that an owner of land who, himself, orders or contracts for an improvement to be erected thereon, cannot escape responsibility for materials purchased for use in the improvement, and that the posting of a notice in such a case amounts to nothing. Appellee also cites Post v. Fleming, 1900, 10 N.M. 476, 62 P. 1087, in which case the co-owner of a mining claim authorized his co-owners and others to place mining machinery upon their claims and to do mining thereon. The foreman in charge employed laborers to work upon the claims with the knowledge of the defendant co-owner, who failed to post a notice of non-liability, and it was held that the laborers were entitled to liens upon the entire claim or claims for the value of the labor performed; that under such circumstances the foreman was the agent of the owners of the claim notwithstanding the fact that he was not employed by the defendant but by other co-owners. Appellee states: "The foreman was in the same category as the contractor in the instant case," but here, the owner, Eby, did employ Imboden and not as a foreman in charge of the work, but as a contractor under an agreement to erect a house on land owned by him. The distinction between the cases is clearly apparent. It is our conclusion, therefore, that Sec. 63–210, supra, is not applicable to a person who caused the building to be constructed or who contracted for the improvements directly or indirectly.

This point must therefore be resolved against the appellee, Eby, and we hold that his action in posting the notice of non-liability was fruitless and afforded him no relief from the attachment of the lien.

Appellants' Point No. 2 contains several propositions, the reason given for including them in one point being that they are so interrelated it would be difficult to separate them. It is here urged that a materialman's lien is not defeated by a provision in a contract between the owner and the contractor that the contractor will pay for materials; that a lien is not defeated by personal notice to a material furnisher to the

effect that the contractor was to pay for all labor and materials, nor by furnisher's receipt of payments from time to time from the contractor, nor by his failure to render bills to the owner, nor by the fact that the owner has paid the contractor in full.

■ Appellants' contentions under this point are fully covered and disposed of in favor of appellants by the case of English v. Branum, 1926, 31 N.M. 334, 245 P. 252. Moreover, appellees did not plead waiver or estoppel in their answer as required by Sec. 19–101(8) (c), N.M.S.A.1941; the case was not tried on these issues, and the conclusions of law made by the trial court do not decide the issues of possible waiver and estoppel. For that reason, the possibility that the proof offered by appellees at trial might support such defenses is of no present concern.

■ Appellants' third point challenges the court's ruling that a contract existed between plaintiff and Eby to hold neither Eby nor the property liable for bills incurred for materials furnished, unless ordered by Eby. They contend that the testimony fails to support finding of fact numbered 11 and the conclusions of law numbered 3 and 4 adopted pursuant to such finding, said finding and conclusions being as follows:

"11. That Eby gave personal notice of the new agreement under date of June 26, 1946, on the same date of its execution, and at said time, Eby in-formed the plaintiff that he had had trouble with Imboden and Parks in paying their account for material and labor and advised plaintiff not to deliver any material without his personal authorization, and that any material delivered without his approval or authorization, plaintiff would have to look to Imboden and Parks for payment as he would not be responsible therefor."

"3. That the delivery of the materials by the plaintiff with the knowledge, information and condition that only Imboden and Parks would be responsible, relieves the defendant Eby of the responsibility therefor, and constitutes a contract between plaintiff and Eby not to hold either him or his property responsible for payment therefor.

"4. That regardless of the applicability of the posting statute, the delivery of the materials under the conditions, as the materials herein were delivered, constitutes a contract between the plaintiff and the defendant Eby pertaining thereto."

Without determining whether the evidence is sufficient to support finding numbered 11, it is our conclusion that finding numbered 11 as it stands is insufficient to sustain the conclusion of the trial court to the effect that there was a contract between plaintiff and Eby not to hold either him (Eby) or *his property* responsible for payment of these bills.

16 R.C.L., Mechanics' Liens, sec. 104, p. 962, states succinctly a well-known rule of law, "A lien will not be regarded as having been waived unless there be a clear, unambiguous contract to that effect, supported by a legal consideration." The court's finding numbered 11 at most determines that plaintiff could expect to receive money payment for the materials in question only from Imboden and Parks; that Eby would not be responsible therefor. There are many variations in building contracts. Under normal circumstances, the owner has no personal liability for the payment of bills incurred by his contractor. The liability of his property and the property's availability for liquidation to pay those bills is a different thing. The finding of the trial court does not state unequivocally that plaintiff agreed that the property should not be subject to liens—he found only that plaintiff agreed not to call upon Eby personally for payment of the bills. This is a distinction of significance in lien cases. Therefore, this finding of fact numbered 11 will not support a conclusion of law that there was a contract on the part of plaintiff not to hold the property of Eby responsible for the payment of these bills. The trial court was in error in making such a conclusion pursuant to its finding of fact even if finding numbered 11 was supported by substantial evidence. It is our conclusion that there was no contract between the parties whereby plaintiffs waived their rights to a mechanic's lien.

In Point Four it is claimed that the notice of lien was made and recorded within the statutory time. The Court had held that the original contract was terminated on or prior to June 26, 1946; that Imboden and Parks breached their contract (the second) with Eby and it was terminated on or prior to December 12, 1947, and that the lien was not filed within 120 days thereafter; that abandonment or termination of a contract is equivalent to completion under the lien statute. The statute referred to reads in part, Sec. 63–206:

"Every original contractor, within one hundred and twenty (120) days after the completion of his contract, and every person, save the original contractor, claiming the benefit of this article, must within ninety (90) days after the completion of any building, improvement, or structure, or after the completion of the alteration or repair thereof, or the performance of any labor in a mining claim, file for record with the county clerk of the county in which such property or some part thereof is situated, a claim containing a statement of his demands, * * *."

As we have seen, three successive contracts were made by Eby: with Imboden (the third), with Imboden and Parks (the second), and with Imboden, Parks, and Smith (the first). The two later contracts recited

that they did not alter the original except as therein provided, and Imboden, who finally managed to complete the job after several suspensions of work and much delay, was at all times the contractor in charge of the work while work was being done on the house. It is Eby's contention that when work was abandoned and later a second and then a third contract executed, each work stoppage started the running of time within which plaintiff could file the lien. Appellants claim that it was only one course of dealing, and that there is no requirement that the lien be filed until the last item of material was furnished. This defense was raised by the owner of the property improved in Hot Springs Plumbing & Heating Co. v. Wallace, 38 N.M. 3, 27 P.2d 984. In December, 1929, a defendant, Standau, agreed with intervenor, Love Lumber Company, to purchase materials for use in constructing a bathhouse on defendant's-owner's property. The sale was on credit and goods were furnished between December 11th and the following March 1st. In February or March the lumber company temporarily suspended deliveries to Standau because of his inability to meet his payments in accordance with the agreement. Deliveries were resumed on April 8th and continued until May 10th when the last item needed had been furnished.

Hot Springs Plumbing & Heating Co., plaintiff, also made a verbal agreement with Standau early in January, 1930, for the installation of bathtubs, etc., in the building then under construction. The work was interrupted on January 24th and not resumed until April 17th following, and completed on May 7th. The reason for the interruption was that the installation of fixtures depended upon the progress made in the construction, which had been delayed as shown above, by Standau's financial difficulties.

The lumber company lien was filed within 120 days after May 10th but more then this period of time after March 1st. It was argued that the suspension of the furnishing of materials constituted a breach of the contract of December 11th which terminated it, and that as to the items furnished up to that time the statutory period within which to file the claim began to run on that date. The Court held, however, that there was not a single, nor merely two, contracts, but a series of numerous contracts; that each order and delivery of materials was not to be the subject of a separate settlement but all were furnished in pursuance of one general object or undertaking and each order did not give rise to a separate lien, and quoted from Phillips, on Mechanics' Liens, Sec. 229, to the effect that:

"Where work or material is done or furnished, all going to the same general purpose, as the building of a house or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire whole, or are so connected as to show

that the parties had it in contemplation that the whole should form but one, and not distinct, matters of settlement, the whole account must be treated as a unit, or as being but a single contract."

The Court concluded that the temporary interruption in the furnishing of the materials by the lumber company pending the making of more satisfactory credit arrangements with Standau constituted no abandonment of the undertaking begun in December, and that a mere suspension in the doing of work or the furnishing of materials by a claimant, unaccompanied by an intention to cease work or to cease furnishing materials permanently, did not start running the time within which the claim had to be filed for materials furnished prior to the suspension. It found no basis in the authorities and saw no reason in logic for holding that the making of these new arrangements constituted a material break in the continuity of the transaction. Likewise, it held that the defendant's similar contention with respect to the time of filing of the lien by Hot Springs Plumbing & Heating Co. was without merit, and that the fact that no plumbing work was done between January and April under the given circumstances nevertheless entitled this company to file its lien within 120 days after doing the last work on the buildings, and found the rule of the majority of American jurisdictions as to materials so furnished, as upon a running account, to be that the period

limited for filing a lien begins to run, as to each item of the account, from the date when the last item was furnished. The temporary interruption in furnishing materials, pending the making of more satisfactory credit arrangements with purchaser was held to constitute no abandonment of the undertaking, citing Van Wart v. Ress, 112 Me. 404, 92 A. 328, 329, to the effect that:

"* * * the interruption of the work for a short period and its subsequent resumption without a change of its original design and character [will not] constitute a new commencement, * * *."

In the present case, it will be observed that none of the several suspensions of work on the house were caused by any act or default chargeable to the material furnisher, and that all of them were occasioned by the contractor's recurring breaches of the construction contract, while in the case just cited the work stoppage was occasioned by the material furnisher who refused to go on delivering materials until more satisfactory credit arrangements had been effected with Standau. Work on the Eby house was suspended and the job abandoned several times by Imboden, but Eby never abandoned his attempts to persuade the contractor to resume work and complete his original contract, twice amended, and although he took thirty-three months to finish the job, Eby paid all material bills due

plaintiff except those incurred during the last eighteen months before completion. Under such circumstances it cannot be said that the lien was not filed in time, this having been done within two months after furnishing the last item of material.

Having disposed of the material points raised for reversal, we find that the Court erred in dismissing the complaint and that its judgment should have been for the plaintiff.

 Appellants' Fifth Point asserts that in the event of a reversal the case should be remanded and the trial court make an award of attorney's fees. The statute reads, Sec. 63-213:

"* * * The court may also allow, as part of the costs, the moneys paid for filing and recording the lien, and reasonable attorney's fee in the district and Supreme Courts."

Under the Act the trial court alone has the authority to allow such fees, Mitchell v. McCutcheon, 33 N.M. 78, 260 P. 1086.

The defendant, Eby, in his answer prayed, in the alternative, that should the Court find him liable for the lien, he should have judgment over against Imboden for such amount, together with his expenses incurred in defending the action. Under the provisions of Sec. 63-211, supra, he is entitled to this relief, since under the statute Imboden was obligated to defend the action at his own expense.

The judgment will be reversed and the cause remanded, with directions that judgment enter for the plaintiffs, in rem, foreclosing their lien in the amount sued for, against the property of the defendant, Eby. The trial court will, in its discretion, allow and tax as costs, in favor of plaintiff, a reasonable fee for the services of its attorney in the District Court and in this Court. Judgment over in such amounts, including costs, will enter in favor of defendant, Eby, and against the defendant, Imboden, and

It is so ordered.

McGHEE, COMPTON and SEYMOUR, JJ., concur.

SADLER, C. J., and LUJAN, J., not participating.