# THE SUSSEL CO. v. FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ST. PAUL AND OTHERS. GERALD FRISCH AND ANOTHER, APPELLANTS.

238 N. W. 2d 625.

February 6, 1976—No. 45164.

*David W. Nord,* for appellants.

*Maun, Hazel, Green, Hayes, Simon & Aretz, Jerome B. Simon,* and *Mark E. Jacobson,* for respondent.

Heard before Rogosheske, Yetka, and Amdahl, JJ., and considered and decided by the court en banc.

DOUGLAS K. AMDAHL, JUSTICE.*

Defendants Gerald Frisch and Wealrice Company appeal from a judgment of the Ramsey County District Court in favor of The Sussel Company and against the individual defendants Frisch, Shaw, Newell, Saxe, and Strand. Affirmed.

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

In August 1971, Gerald Frisch, Irving Shaw, John Newell, S. John Saxe, and Melvin A. Strand entered into a joint venture to build and own an apartment complex which they named Highland Royale.

The First Federal Savings and Loan Association of St. Paul (First Federal) made financing for the project available at 9 1/4 percent per annum and, because the usury laws of this state do not permit a rate in excess of 8 percent per annum on loans to individuals, the individual participants placed the title to real estate acquired for the project in the names of Wealrice Company (a corporation in which Frisch owned the stock and Frisch and Shaw were officers) and in Allen Corporation (a corporation engaged in the construction business in which Saxe, Newell, and Strand were officers and stockholders). On or about October 7, 1971, Wealrice Company (Wealrice) and Allen Corporation (Allen) executed the loan documents as owners of the real estate and the Highland Royale project. The parties intended that the real estate would be reconveyed to the individuals without compensation or consideration to the corporations upon completion of the project.

First Federal required that the project owners designate a contractor for the project, and Allen and Wealrice executed a document designating Allen as the contractor for the Highland Royale project.

Allen commenced construction in the fall of 1971. All materials for the project, including those sold by The Sussel Company (Sussel), were purchased in the name of Allen and billed by the suppliers to Allen. Sussel dealt directly with Allen and had no knowledge as to the relationships or agreements between the individual participants, Wealrice, Allen, or First Federal.

First Federal required that lien waivers be furnished by Allen, or by the various suppliers and subcontractors to Allen, in the amount of the requested disbursement before it disbursed loan proceeds.

Sussel had sold construction materials to Allen for other construction projects, as well as Highland Royale, and on some oc-

casions had provided Allen with lien waivers which were blank except for the signature of an agent of Sussel. Allen from time to time completed the waivers to show payment to Sussel on the Highland Royale project in excess of the amounts actually paid to Sussel on the project, and the lien waivers thus completed were presented to First Federal and funds in the amounts shown on the waivers were disbursed to Allen.

The issue is: If partnership funds designated for the payment of a specific partnership creditor are diverted by a partner and such diversion is made possible through the negligence of the creditor and there is no collusion between the acting partner and the creditor and there is no knowledge on the part of the creditor of such diversion and there is no showing that the diverted funds were not applied to partnership purposes, is the partnership liable to the creditor for the debt which was intended to be paid by the diverted funds?

We answer the question in the affirmative.

Appellants do not challenge the trial court's determination that Frisch, Shaw, Newell, Saxe, and Strand were partners and that Wealrice and Allen were instrumentalities and alter egos of the partners and not acting as separate entities.

Appellants concede that the general agency rule is that the acts of one member of a partnership are binding on other members if—

"* * * apparently carrying on in the usual way the business of the partnership * * * unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority." Minn. St. 323.08.

But appellants argue that the following agency rule must be applied here to reach a result opposite from that required by the general rule:

"There is a well-established exception to the general rule that the knowledge of an agent is to be imputed to the principal, in

situations where the conduct and dealings of the agent are such as to raise a clear presumption that he will not communicate to the principal the facts in controversy, as where the agent acting nominally as such is in reality acting in his own business or for his own personal interest and adversely to the principal, or is acting fraudulently against the interests of the principal, or for any other reason has a motive or interest in concealing the facts from his principal. This is the case where the agent is engaged in committing an independent fraudulent act on his own account and the facts to be imputed relate to this fraudulent act so that the communication of such facts to the principal would necessarily prevent the consummation of the fraud. Such is also the case where the third persons, or their representatives, who claim the benefit of the imputation of the agent's knowledge to the principal, collude with the agent to cheat or defraud the principal." 3 Am. Jur. 2d, Agency, § 282.

There are several reasons why this exception to the general rule is not applicable here. First, the trial court specifically found—

"* * * that no evidence was offered to show to what extent, if any, the funds so received by Allen Corp. were used to pay bills on the Highland Royale project or were diverted by Allen Corp. to other uses."

Thus, we cannot conclude that Allen was acting for its own personal interest adversely to the principal or acting fraudulently against the interest of the principal.

The second reason why the exception to the general rule does not apply is that Sussel had no knowledge of the alleged independent fraudulent conduct of Allen since Sussel did not even know that Allen was acting on behalf of a partnership. In this connection, the trial court specifically found that there was—

"* * * no evidence that Sussel had made any improper or unauthorized application of payments on the various Allen Corp. accounts for the several projects which were simultaneously being constructed by Allen Corp."

In 3 Am. Jur. 2d, Agency, § 282, p. 646, it is stated that:

"The view has been expressed, however, that the fraud of an agent cannot alter the legal effect of his knowledge with respect to his principal in regard to third persons who had no connection whatever with such agent in relation to the perpetration of the fraud, and no knowledge that any such fraud had been perpetrated." (Citing Armstrong v. Ashley, 204 U. S. 272, 27 S. Ct. 270, 51 L. ed. 482 (1907), and Restatement, Agency 2d, § 271.)

A third reason why the "independent fraudulent act" exception does not apply is that Sussel dealt solely with Allen.

"A qualification of the rule that the knowledge of an agent engaged in an independent fraudulent act on his own account is not the knowledge of the principal has been made where the agent, although engaged in perpetrating such an act on his own account, is the sole representative of the principal. In such case, if the principal asserts or stands on the transaction, either affirmatively or defensively, or seeks to retain the benefits of the transaction, he is charged with the agent's knowledge. In such circumstances, the agent is said to be the alter ego of his principal, since he is merely the agency through whom the principal himself acted; and this 'sole actor' or 'alter ego' principle has been characterized as an exception to an exception—that is, it is an exception to the 'independent fraudulent act' exception to the general rule that the agent's knowledge will be imputed to the principal—and it brings the governing principle back, full circle, to the imputation of knowledge to the principal." 3 Am. Jur. 2d, Agency, § 284. See, also, Blumberg v. Taggart, 213 Minn. 39, 45, 5 N. W. 2d 388, 391 (1942); Restatement, Agency 2d, § 282(2)(b).

A fourth and fundamental reason why the exception to the general rule of imputed knowledge is not applicable is that knowledge is not a requisite to appellant Frisch's liability on the contract. Kenyon Co. v. Johnson, 144 Minn. 48, 174 N. W. 436 (1919); 3 Am. Jur. 2d, Agency, § 312.

Affirmed.