## In re WOODCREST HOMES, INC., Debtor.

### WOODCREST HOMES, INC., Plaintiff,

v.

The FIRST NATIONAL BANK OF PUEBLO; Republic National Bank of Pueblo; KHL Engineering Consultants, Inc.; Don H. Martin and Joy Martin, d/b/a Martin Trenching and Excavating, a co-partnership; United Bank of Pueblo; Daryl Henry; Phyllis Henry; Tracy Atkinson; and William Thiebaut, Jr., as Public Trustee in and for the County of Pueblo, State of Colorado; Defendants.

Bankruptcy No. 80 K 1857.

United States Bankruptcy Court, D. Colorado.

May 20, 1981.

Paul H. Spivak, Denver, Colo., for plaintiff.

William E. Kenworthy, Denver, Colo., for defendants Martin.

Robert F. T. Krassa, Pueblo, Colo., for defendant Tracy Atkinson.

## MEMORANDUM OPINION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DETERMINING LIENS

GLEN E. KELLER, Jr., Bankruptcy Judge.

Plaintiff seeks a determination of the validity, extent, and priority of Defendants' interest in its real property. The Defendant Martin Trenching and Excavating has counterclaimed for an order declaring it to have a valid mechanic's lien in the amount of $295,692.79 and permitting foreclosure thereof. The matter is before the Court largely upon stipulated facts, a brief recitation of which is important to the understanding of the legal issues.

In 1978, the Plaintiff, Woodcrest Homes, Inc., began to develop a residential subdivision in Pueblo, Colorado. In July, the City of Pueblo approved the subdivision plat and, in doing so, accepted Woodcrest's dedication of the subdivision streets to the public for its perpetual use and benefit. Martin agreed in September to perform certain work and immediately began to lay the water and sewer lines and complete the necessary excavation. The various water and sewer lines were installed both within and outside the geographic boundaries of the subdivision. Some of the lines within the subdivision were located under the previously dedicated streets, while others were situated in utility easements on Woodcrest's property. Woodcrest paid Martin $75,-750.00 on January 9, 1979. On the 9th of May, $90,000.00 was paid, and on the 21st of May, Martin received a check from Plaintiff for $45,000.00. Much of the work was completed by August, 1979. Martin sent Woodcrest a bill for $295,692.79, reflecting the total amount then due. That invoice was never paid, and Martin took steps to establish and foreclose a mechanic's lien on the Woodcrest property under the General Mechanic's Lien Statute, §§ 38–22–101 et seq., C.R.S. 1973. Before foreclosure could be obtained, however, a petition under Chapter 11 of Title 11, United States Code, was filed with this Court, effectively staying further action by Martin. In the course of administering Debtor's estate, a sale free and clear of all liens was authorized, and the entire subdivision was sold to a third party. From the sale, Woodcrest received $100,000.00 in cash and a note for the balance of $865,-000.00. Of that $100,000.00, pursuant to all lien claimants' stipulation, Martin was paid $77,327.25.

Woodcrest advances two arguments in opposition to Martin's alleged mechanic's lien. The first is that Martin has waived its right to a mechanic's lien for all work completed prior to May 23, 1979, when Martin received its last payment from Woodcrest. This is based on Martin's apparent execution of two lien waivers located on the backs of the May 9th and May 21st checks. The second argument is that much of the work done was not lienable under the statute.

■ The lien waivers were stamped forms and provided as follows:

Endorsement and negotiation of the within check constitutes an irrevocable waiver of all mechanic's liens rights for material and/or labor furnished and/or performed for the construction of improvements on the following described property to date of such negotiation. Street Address: Bellview, First and Second Filing

Owner: Woodcrest Homes, Inc. Being in the City of Pueblo, County of Pueblo, State of Colorado.

Whether the above language is effective as a waiver of Martin's pre-May 23rd lien rights must be determined. It is clear that the right to a mechanic's lien can be waived in Colorado. *See* § 38–22–119 C.R.S. 1973 and *Bishop v. Moore*, 137 Colo. 263, 323 P.2d 897 (1958). However, if the waiver is to be enforceable, consideration is required. *See, e. g., Pierson v. Sewell*, 97 Idaho 38, 539 P.2d 590 (1975); *Kelly v. Johnson*, 251 Ill. 135, 95 N.E. 1068 (1911); *Sussel Company v. First Federal Savings and Loan Association*, 304 Minn. 433, 232 N.W.2d 88, aff'd, 307 Minn. 199, 238 N.W.2d 625 (1975); *Skidmore v. Eby*, 57 N.M. 669, 262 P.2d 370 (1953). Colorado authority on this point appears to be in accord. *See Western Federal Savings and Loan Association v. National Homes Corporation*, 167 Colo. 93, 445 P.2d 892 (1968). In the *Western Federal* case, the Colorado Supreme Court overturned a lower court ruling that certain lien waivers were unenforceable for want of consideration. The Court found that the voluntary agreement of the lender to continue financing a financially troubled joint venture was adequate consideration to support lien waivers executed by a joint venturer who had supplied materials.

■ A lien waiver may be enforceable even without consideration if an estoppel can be shown. The owner or lender must show that he materially changed his position in justifiable reliance upon the lien waiver executed by the claimant. *See, e. g., Giammarino v. J.W. Caldewey Construction Company*, 72 S.W.2d 159 (Mo.App.

1934). This principle has recently been approved in Colorado. In *Mountain Stone Company v. H.W. Hammond Company*, 39 Colo.App. 58, 564 P.2d 958 (1977), it was held that where a subcontractor advised an owner in writing that he had been paid in full and the owner proceeded, to disburse funds to the contractor in reliance upon the representation, the waiver was enforceable without finding specific consideration. The Court quoted the following language from *McLellan v. Hamernick*, 264 Minn. 345, 118 N.W.2d 791 (1962):

The owner of the property was entitled to protect himself from liens against his property by requiring lien waivers before he paid the balance due the contractor. If those furnishing material and labor were willing to execute such lien waivers, relying upon the contractor's promise to pay them, they should not be heard to complain after the homeowner has altered his position in reliance on such waivers. Any other rule would render lien waivers valueless.

Applying these principles to the case at hand, The Court must find either consideration for the lien waivers or an estoppel. Clearly, the payments made by the May 9th and May 21st checks cannot be consideration since Woodcrest was merely doing that which it was legally obliged to do. *Beebe Construction Corporation v. Circle R Company*, 10 Ohio App.2d 127, 226 N.E.2d 573 (1967). In *Beebe*, it was held that a waiver executed in consideration of payments the owner was legally required to make was not a bar to the assertion of a lien for any amount remaining unpaid. Woodcrest argues that the checks are consideration for the waiver because they were issued prior to the completion by Martin of its duties under the contract. According to Plaintiff, the agreement provided for no progress payments to Martin. If this were true, the lien waivers might well be enforceable. The rule has been summarized in *Murray on Contracts*, § 86, (2d Rev.ed. 1974):

. . . [I]t has been quite uniformly decided that part payment of a liquidated debt that is due is not consideration for dis-

charge of the whole debt, nor is part or full payment of a debt consideration for any other promise by the creditor.... However, ... courts [are] astute to find consideration in such a transaction if the debtor has done anything at all in connection with the payment that he was not under obligation to do. Thus if the debtor pays part or all of the debt before it is due ... consideration is usually found to exist.

The difficulty for Woodcrest is that there is very little evidence of what the terms of the contract were in this case. The agreement was completely oral and was always somewhat vague. In short, the Court is not persuaded that the progress payments represented a voluntary relinquishment by Woodcrest of its contractual rights.

■ Estoppel has not been shown in this case either. The lien waivers were not obtained prior to the payments by Woodcrest as in the *Hammond* case. Any reliance by Plaintiff on the assumption that Martin was waiving many dollars of lien rights in exchange for two partial payments appears unreasonable under the authorities cited. Every estoppel requires proof of justifiable reliance upon the representations of another. *Jones v. Kristensen*, 38 Colo.App. 513, 563 P.2d 959, *aff'd*, 195 Colo. 122, 575 P.2d 854 (1977). That is simply not present.

■ Having found the lien waivers unenforceable in this case, it must be determined to what extent Martin has a valid mechanic's lien on the Debtor's property. Woodcrest argues that the General Mechanic's Lien statute, §§ 38–22–101, *et seq.*, C.R.S. 1973, only supports the assertion of a lien for improvements actually located on the property of the estate. It urges the Court to deny Martin a lien for that portion of the water and sewer lines located outside the subdivision or under the public streets. Martin contends that the law gives it a lien on the Debtor's real property for all work done which benefits the property, regardless of whether the improvements are physically located on subdivision land.

Section 38–22–101 C.R.S. 1973 provides:

> [C]ontractors ... performing labor upon or furnishing directly to the owner ... materials to be used in construction ... [or] ... improvement ... of any ... improvement upon land, including adjacent curb, gutter, and sidewalk ... shall have a lien upon the property upon which they have ... rendered service or bestowed labor . . . .

This provision has been construed by the Colorado Supreme Court to preclude the assertion of a mechanic's lien for improvements not located on the real property benefited. *Brannan Sand and Gravel Company v. Santa Fe Land and Improvement Company*, 138 Colo. 314, 332 P.2d 892 (1958). In *Brannan*, a contractor filed a mechanic's lien on an owner's property for the entire value of a road that crossed the owner's land. The court reduced the contractor's lien to the value of that portion of the road located on the owner's land stating:

> In the express words of the statute, containing as we believe, no ambiguity, there are two limitations on the lien involved. First, it is granted only upon the property upon which the labor, services and materials are bestowed or rendered; second only to the extent of the *value* of the labor, services and material *rendered upon the property*. (Court's emphasis.)

In *Fleming v. Prudential Insurance Company of America*, 19 Colo.App. 126, 73 P. 752 (1903), a claimant attempted to establish a lien for the value of a sidewalk on adjacent privately-owned property. At that time, the statute made no provision, as it does now, for adjacent sidewalks. The Colorado Court of Appeals denied the lien, pointing out that:

> The sidewalk in question was not laid upon the land of the owner; it was laid in the street.
>
> The statute does not give a lien for the work done and material here furnished because the improvement resulting was not made upon the land of the owner.

These cases lead the Court to conclude that except as otherwise provided by statute, a mechanic's lien can only be asserted on real property upon which the labor, material,

services, or improvements are actually bestowed. There are Colorado cases that suggest that all property benefited by improvements is chargeable for the value thereof. *See, e. g., Hess Flume Co. v. La Junta Co.,* 63 Colo. 236, 166 P. 246 (1917). However, the fact that property may benefit from improvements cannot relieve the lien claimant of the obligation to show that he falls within the parameters of § 38–22–101. That section contains an express and exhaustive list of lienable work, and courts are not at liberty to add to it. *Ridge Erection Company v. Mountain States Tel. & Tel. Company,* 37 Colo.App. 477, 549 P.2d 408 (1976); *C & W Electric Corporation v. Casa Dorado Corporation,* 34 Colo.App. 117, 523 P.2d 137 (1974); *Chambers v. Nation,* 178 Colo. 124, 497 P.2d 5 (1972).

■ Since the statute does not allow the assertion of a lien for off-site improvements, the utility lines Martin installed under the public street or outside the subdivision cannot be the basis for a mechanic's lien on Woodcrest's property. As for the lines located on utility easements within the subdivision, a valid mechanic's lien can be asserted since the Debtor was the fee owner of the property subject to the easement. *Barnard v. Gaumer,* 146 Colo. 409, 361 P.2d 778 (1961).

The parties have stipulated that all the storm sewer lines and water mains were installed either underneath the public streets or outside the subdivision entirely. The invoices for these improvements were $58,362.59 and $128,316.40 respectively. No lien may be asserted for these sums. With regard to the sanitary sewers, 808.75 feet of 8-inch line and 495.16 feet of 10-inch line were located on utility easements on Woodcrest's property. The cost per foot of the lines was $6.50 and $8.95 respectively. Hence, Martin has a lien for $9,690.56. In addition, it appears that three manhole covers costing $695.00 each are allowable for a total of $2,085.00. Finally, the prorata share of pipe bedding and services corresponding to the lienable footage of storm sewer line comes to $4,467.37. When the above amounts are added to the $10,238.00 owing for the on-site excavation work, Mar-

tin's total secured claim equals $26,480.92. Since this is less than the $77,327.25 already received by Martin under the court-approved sale, the Defendant has no lien remaining on Woodcrest's property. Of course, Martin still has an unsecured claim against the estate in the amount of $218,-365.54. Now, therefore, it is

ORDERED that the lien claimed by Don H. Martin and Joy Martin, d/b/a Martin Trenching and Excavating, be and the same is hereby set aside and held for naught.

FURTHER ORDERED that the liens claimed by the remaining Defendants are governed by the stipulation of the parties.

FURTHER ORDERED that each party hereto shall, within 10 days of the date hereof, file a written request for the withdrawal of exhibits received in evidence or in the possession of the Court. Upon this Order becoming final, exhibits so requested shall be returned to the parties, and any party not requesting return of exhibits shall be deemed to have waived such claim, and the Clerk may destroy or otherwise dispose of the exhibits as the Clerk shall so determine. As used herein, "Order becoming final" means that this Order shall not be subject to further appellate review.