**TUSCANY, LLC, a Colorado limited liability company; and BCORP Tuscany, LLC, as nominee, a Colorado limited liability company, Plaintiffs–Appellees,**

v.

**WESTERN STATES EXCAVATING PIPE & BORING, LLC, a Colorado limited liability company; and Frontline Equipment & Trucks, LLC, a Colorado limited liability company, Defendants–Appellants.**

Nos. 03CA0999, 03CA1852.

Colorado Court of Appeals, Div. II.

Aug. 11, 2005.

Certiorari Denied Feb. 6, 2006.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2004.

Jorgensen, Motycka & Lewis, P.C., Gerald L. Jorgensen, Theodore J. Finn, Greeley, Colorado, for Plaintiff–Appellee Tuscany, LLC.

Holland & Hart, LLP, David S. Prince, Susannah W. Pollvogt, Douglas A. Karet, Denver, Colorado, for Plaintiff–Appellee BCORP Tuscany, LLC.

Shughart, Thomson & Kilroy, PC, D.J. Poyfair, Bennett L. Cohen, Denver, Colorado, for Defendants–Appellants.

WEBB, J.

In this action under the Spurious Liens and Documents statute (SLD statute), § 38–35–201, et seq., C.R.S.2004, defendants, Western States Excavating Pipe & Boring, LLC and Frontline Equipment & Trucks, LLC, a related entity (collectively Western States), appeal the trial court's judgment discharging and releasing their mechanics' liens and its order awarding attorney fees in favor of plaintiffs, Tuscany, LLC (Tuscany) and BCORP Tuscany, LLC (BCORP). We conclude mechanics' liens are excluded from the SLD statute, and therefore we reverse.

Western States performed work on Tuscany's housing development. BCORP bought lots in the development for resale. When a payment dispute arose with Tuscany, Western States served a notice of intent to file mechanics' liens.

Tuscany disagreed that it owed any amount to Western States. Nevertheless, to resolve the dispute and close on financing, Tuscany orally promised to pay Western States $704,540.98 immediately on its execution of a lien waiver and an additional $617,000 from the proceeds of a loan that Tuscany expected to close in the near future. Western States executed a "Final Release and Waiver of Lien" that cited the $704,540.98 payment as consideration, which was then disbursed to Western States.

Several months later, Western States filed mechanics' liens against the development because Tuscany had not made the second payment. In response, Tuscany brought this action challenging the liens and requested a show cause hearing under § 38–35–204, C.R.S.2004. Although BCORP had commenced a separate action, the trial court allowed it to join in Tuscany's request for a hearing. Thereafter, the court entered the same orders in both cases.

Following a three-day hearing, the trial court found, with record support, that Tuscany had substantially complied with its obligations under the waiver and that, when Western States filed the mechanics' liens, it "had knowledge that [its] claims for mechanics' liens had been waived." The court also found "no evidence to support" Western States' primary defense that, because Tuscany knew that it would not be able to pay the additional $617,000, Tuscany had fraudulently induced the waiver. The court noted that, when Western States executed the waiver, it "was taking a risk" of partial nonpayment because "the other loan wasn't assured."

The court concluded that the mechanics' liens were groundless because of Western

States' waiver and therefore discharged the liens as "spurious documents" under § 38–35–201(3), C.R.S.2004. The court also held that Western States was estopped from asserting the waiver was invalid.

In a subsequent hearing under § 38–35–204(1)(c) and (2), the court awarded costs and attorney fees to both Tuscany and BCORP.

### I.

Western States first contends mechanics' liens cannot be "spurious liens" because § 38–35–201(4)(a), C.R.S.2004, excludes from the definition of "spurious lien" any lien provided for by a specific Colorado statute, and mechanics' liens are governed by the General Mechanics' Lien statute, § 38–22–101, et seq., C.R.S.2004. According to Western States, because such liens cannot be challenged as spurious liens, the trial court erred in allowing them to be challenged under the SLD statute as "spurious documents." We agree.

### A.

■ We review an issue of statutory construction de novo. *Vigil v. Franklin,* 103 P.3d 322 (Colo.2004).

In construing statutes, our primary duty is to give full effect to the intent of the General Assembly. *Vigil v. Franklin, supra.* We look first to the language of the statute to determine legislative intent, giving effect to every word and reading words and phrases in context. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585 (Colo.2005).

If the statute is unambiguous, we look no further. *Hensley v. Tri–QSI Denver Corp.,* 98 P.3d 965 (Colo.App.2004). We rely on statutory construction principles only when the statutory language is ambiguous. *Coffman v. Colo. Common Cause,* 102 P.3d 999 (Colo.2004).

We construe a statute as a whole in order to give "consistent, harmonious, and sensible effect to all its parts." *Bd. of County Comm'rs v. Costilla County Conservancy Dist.,* 88 P.3d 1188, 1192 (Colo.2004). We avoid constructions that render any part of a statute meaningless, *In re Estate of Hall,* 948 P.2d 539 (Colo.1997), that create a conflict between statutes, *Lobato v. Indus. Claim Appeals Office,* 105 P.3d 220 (Colo.2005), or that lead to an illogical or absurd result. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist., supra.* We recognize that "[s]pecific terms prevail over the general in the same or another statute." *Martin v. People,* 27 P.3d 846, 852 (Colo.2001)(quoting *Clifford F. MacEvoy Co. v. United States,* 322 U.S. 102, 107, 64 S.Ct. 890, 894, 88 L.Ed. 1163 (1944)).

If statutory language permits alternative constructions, we may also consider the legislative history to determine its purpose. *L.E.L. Constr. v. Goode,* 867 P.2d 875 (Colo. 1994); *see also* § 2–4–203, C.R.S.2004. We then construe the statute to serve the legislative purpose underlying its enactment. *Coffman v. Colo. Common Cause, supra.*

### B.

■ Section 38–35–201 provides in relevant part:

(2) "Lien" means an encumbrance on real or personal property as security for the payment of a debt or performance of an obligation.

(3) "Spurious document" means any document that is forged or groundless, contains a material misstatement or false claim, or is otherwise patently invalid.

(4) "Spurious lien" means a purported lien or claim of lien that:

(a) Is not provided for by a specific Colorado or federal statute or by a specific ordinance or charter of a home rule municipality . . . .

We begin by noting that, as a practical matter, to encumber record title to real or personal property a lien must be represented by a document. Because the definition of "spurious document" includes "any document," the definition would embrace all liens. *See Hall v. Walter,* 969 P.2d 224 (Colo.1998)(giving effect to the ordinary meaning of the term "any" results in an expansive definition of "any person" under § 6–1–113, C.R.S.2004). Thus, this definition

would allow invalidation of a mechanics' lien as a "spurious document."

Nevertheless, because mechanics' liens are "provided for by a specific Colorado ... statute," all such liens are excluded from the definition of "spurious liens" by § 38–35–201(4)(a) and therefore they cannot be invalidated on that basis. Moreover, the definition of "spurious documents" does not refer to liens, and the definition of "lien" does not refer to documents.

Hence, we discern two possible interpretations of the SLD statute's plain language. Under one interpretation, which the trial court applied, a lien that is not within the definition of a "spurious lien" may still be challenged as a "spurious document." Under the other interpretation, which Western States urges, a lien may be challenged only if it is a "spurious lien." Because the statute is susceptible of these differing interpretations, we turn to its legislative history.

A spokesperson for the legal community testified that the SLD statute's purpose was to address the "very serious problem" of groups "who are disgruntled with the American—present American system of government" filing "phony documents and liens against public officials' property." Later, when discussing the applicable time frame for bringing an action to enforce a lien, Willis Carpenter, the primary drafter, testified that "a mechanics' lien comes under the exception of a lien created by statute, so a mechanics' lien would not be affected by this statute at all." Hearings on H.B. 1143 before the Senate Judiciary Committee, 61st General Assembly, 1st Session (Feb. 17, 1997). Thus, the legislative history supports the interpretation that mechanics' liens are not subject to challenge under the SLD statute.

Principles of statutory construction also favor this interpretation. Specific terms prevail over general terms. *Martin v. People, supra.* Within § 38–35–201 of the SLD statute, subsection (2) defines "liens" and subsection (4) uses this word in defining "spurious liens." In contrast, subsection (3), which defines "spurious documents," does not use the word "lien." Thus, when challenging a lien, the more specific provision—subsection (4)—

should prevail over the more general provision—subsection (3).

We must also avoid an interpretation that creates a conflict between two statutes. *Lobato v. Indus. Claim Appeals Office, supra.* If a mechanics' lien can be a "spurious document," then a conflict would exist regarding the length of time such a lien can hold property without commencement of an enforcement action. The General Mechanics' Lien statute provides that a lien can hold property for six months after the "last work or labor is performed, or laborers or materials are furnished, or after the completion of the building, structure, or other improvement," within which an enforcement action must be commenced. Section 38–22–110, C.R.S.2004. The SLD statute provides for a holding period of only thirty days within which an enforcement action must be commenced. Section 38–35–203, C.R.S.2004. This conflict may be avoided by excluding mechanics' liens from the SLD statute.

◼ We reject Tuscany's interpretation that, because Western States executed the lien waiver, its subsequently recorded liens are not "provided for by a specific Colorado ... statute." Under § 38–22–101(1), C.R.S. 2004, "[e]very person who furnishes [labor or materials] ... shall have a lien upon the property upon which they have furnished [labor or materials]." The General Mechanics' Lien statute does not condition the right to a lien upon the absence of a waiver, although by virtue of case law the right to a mechanics' lien may be waived. *In re Woodcrest Homes, Inc.,* 11 B.R. 342 (Bankr. D.Colo.), *aff'd in part and rev'd in part,* 15 B.R. 886 (D.Colo.1981). Therefore, a lien filed by a mechanic or materialman is "provided for by a specific Colorado ... statute," even if the lien may be held unenforceable based on waiver.

Tuscany also asserts that excluding mechanics' liens from the SLD statute would deprive property owners of the statute's expedited procedure for clearing their titles, if persons at whom the statute was directed filed groundless mechanics' liens. *See Westar Holdings P'ship v. Reece,* 991 P.2d 328, 331 (Colo.App.1999)(statutory procedure creates "fail-safe mechanism" for removing in-

valid liens). We are not persuaded that this possibility requires a different interpretation.

Since 1899, the General Mechanics' Lien statute has given special protection to most service and goods providers and has set forth detailed procedures for determining their rights. Further, this statute is to be construed liberally for the benefit of mechanics and materialmen. Section 38–22–119, C.R.S. 2004; *see Compass Bank v. Brickman Group, Ltd.,* 107 P.3d 955 (Colo.2005). Hence, allowing mechanics' liens to be summarily adjudicated under the SLD statute would give that statute an unreasonably broad interpretation in derogation of the favored treatment afforded mechanics and materialmen. *See Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist., supra.*

A property owner whose title is clouded by a mechanics' lien filed by a person who is not a mechanic or materialman within the scope of § 38–22–101(1) may promptly adjudicate that narrow issue by commencing a quiet title action under C.R.C.P. 105 and filing a summary judgment motion under C.R.C.P. 56(a) twenty days later.

Accordingly, we conclude the trial court erred in applying the SLD statute to the mechanics' liens at issue here. Having so concluded, we need not address the trial court's finding that Western States was estopped from denying the validity of the waiver.

## II.

■ Western States next contends the removal of its liens under the SLD statute was not harmless because by following the expedited statutory procedure, the trial court denied it discovery and a trial. Tuscany responds that Western States conducted discovery in an unsuccessful motion for relief under C.R.C.P. 60(b)(2) and reinstatement of the liens is moot due to the passage of time. We agree that forcing Western States to proceed without discovery was not harmless.

## A.

Subject to certain limitations, parties may obtain discovery regarding any matter that is not privileged and is relevant to their claims and defenses. C.R.C.P. 26(b)(1).

■ Because discovery can significantly affect a party's ability to litigate the merits of the controversy, *Leaffer v. Zarlengo,* 44 P.3d 1072 (Colo.2002), the discovery rules are to be liberally interpreted. *Beth Israel Hosp. & Geriatric Ctr. v. Dist. Court,* 683 P.2d 343 (Colo.1984).

■ Failure to apply the correct legal standard to discovery determinations constitutes prejudicial error when proper discovery may have enabled a party to meet its prima facie showing on claims dismissed by the trial court. *Leland v. Travelers Indem. Co.,* 712 P.2d 1060 (Colo.App.1985).

The General Mechanics' Lien statute provides that "[t]he provisions of the Colorado rules of civil procedure, insofar as the same are applicable and not in conflict with the provisions of this article, shall be observed in proceedings to establish and enforce mechanics' liens." Section 38–22–120, C.R.S.2004.

The SLD statute contains no comparable provision. Moreover, the twenty day period provided in § 38–35–204(1)(a), C.R.S.2004, for holding a show cause hearing does not allow the respondent to conduct discovery within the time limitations in C.R.C.P. 30 to 36. Although C.R.C.P. 105.1(d) provides that the trial court may, in its discretion, "continue the hearing on the show cause order for further proceedings and trial," the rule does not expressly permit discovery.

Tuscany and BCORP do not dispute that Western States has preserved this issue, and we agree. In its response to Tuscany's "Verified Petition to Remove Spurious Lien," Western States "respectfully submit[ed] that it is not the purpose of the Colorado spurious lien statute to provide such a drastic remedy without formal discovery and a trial on the merits." Nevertheless, the trial court held the show cause hearing four days after Western States responded to Tuscany's petition, and thirty-three days from the filing of the petition, without allowing Western States to

conduct any discovery. Further, during opening statements, Western States reiterated that Tuscany was misusing the spurious lien statute to avoid discovery and a trial on the merits.

Because Western States cannot show what evidence it might have obtained through discovery, we are unable to determine how such evidence may have impacted the trial court's decision on fraudulent inducement. Hence, we are unwilling to treat the error as harmless. *See Leland v. Travelers Indem. Co., supra.*

■ We reject Tuscany's argument that discovery conducted by Western States in connection with its unsuccessful motion for relief under C.R.C.P. 60(b)(2), which it sought on partial remand from this court, compensated for lack of discovery in the initial proceeding. Western States sought relief under C.R.C.P. 60(b)(2) for fraud allegedly perpetrated by Tuscany witnesses on the trial court during the show cause hearing. This species of fraud, sometimes termed "extrinsic," differs from fraud between the parties in the underlying transaction, sometimes termed "intrinsic fraud," which was Western States' primary defense at the show cause hearing. *See In re Marriage of Gance,* 36 P.3d 114 (Colo.App.2001). Thus, the trial court's rejection of the extrinsic fraud claim does not inform us how the court might have ruled on the intrinsic fraud claim, had discovery been available to Western States before the show cause hearing.

### B.

■ Tuscany also contends expiration of the six-month period under § 38–22–110 for commencing an action to enforce a mechanics' lien renders the reinstatement of the liens moot. We are not persuaded.

The record does not indicate when the last work was performed, the last materials were furnished, or the building was completed. Therefore, Tuscany has failed to show that the liens, if reinstated, could not be enforced because the six-month limitation period under § 38–22–110 has lapsed. Having so concluded, we need not address Western States' assertion that Tuscany is equitably estopped from raising this limitations period.

Accordingly, we conclude that forcing Western States to proceed under the SLD statute, without discovery, did not constitute harmless error, and that on this record the mootness doctrine does not preclude relief.

### III.

Because we have concluded the trial court erred in applying the SLD statute, the award of costs and fees to Tuscany and BCORP must be reversed. *See Berenergy Corp. v. Zab, Inc.,* 94 P.3d 1232 (Colo.App.2004)(*cert. granted* 2005 WL 1713278, July 25, 2005).

Western States is entitled to recover its costs and reasonable attorney fees from Tuscany and BCORP, *see* § 38–35–204; C.R.C.P. 105.1(d), as well as its appellate attorney fees allocable to the SLD statute. *Cf. Mau v. E.P.H. Corp.,* 638 P.2d 777 (Colo.1981)(prevailing party entitled to appellate attorney fees under the mandatory fee-shifting provision of § 38–12–103, C.R.S.2004); *Montemayor v. Jacor Communications, Inc.,* 64 P.3d 916 (Colo.App.2002)(prevailing party entitled to appellate attorney fees under the mandatory fee-shifting provision of the former § 8–4–114); *Wark v. Bd. of County Comm'rs,* 47 P.3d 711 (Colo.App.2002)(prevailing party entitled to appellate attorney fees under the mandatory fee-shifting provision of § 13–17–201, C.R.S.2004).

However, because Western States requested attorney fees for its C.R.C.P. 60(b)(2) motion only in its reply brief on appeal, we need not address this issue. *See Vanderbeek v. Vernon Corp.,* 25 P.3d 1242 (Colo.App. 2000), *aff'd,* 50 P.3d 866 (Colo.2002). Also, because Tuscany did not prevail on appeal, its request for appellate attorney fees and costs must be denied. *See Riverton Produce Co. v. State,* 871 P.2d 1213 (Colo.1994).

Accordingly, we reverse the trial court's orders awarding costs and attorney fees to Tuscany and BCORP, and remand for determination of Western States' costs and reasonable attorney fees and an allocation of that award between Tuscany and BCORP.

## IV.

■ Western States finally contends it should be fully restored to its pre-execution status quo, which would require payment of the fair market value of its property, sold at a sheriff's sale when Tuscany executed on its judgment for costs and attorney fees. Tuscany responds that because Western States did not obtain a stay of execution, Tuscany lawfully executed on the judgment, and therefore it cannot be held liable for more than the money it received from the sheriff's sale. We agree with Tuscany.

The measure of restitution owed to a judgment debtor, after the judgment on which the creditor has executed is reversed on appeal, presents an issue of first impression in Colorado.

According to Restatement (First) of Restitution § 74 (1937), a person whose property has been taken in execution on a judgment is entitled to restitution if the judgment is reversed, unless restitution would be inequitable or the parties agree that payment is final.

However, comment m to this section provides that if the judgment creditor acted in good faith, the sale was properly conducted, and the property was acquired by a bona fide purchaser, the judgment debtor is entitled to recover only the proceeds from the sale, plus interest.

Other jurisdictions have adopted the Restatement's rule. *See Mann v. Thompson*, 118 So.2d 112 (Fla.Dist.Ct.App.1960)(judgment creditor only liable for benefits received, not all resulting damages to judgment debtor); *Reese v. Reese*, 696 N.E.2d 460 (Ind.Ct.App.1998)(judgment creditor liable for benefits received plus interest); *State v. A.N.W. Seed Corp.*, 116 Wash.2d 39, 802 P.2d 1353 (1991)(judgment creditor is liable only for proceeds of execution). *But see Klaes v. Scholl*, 412 N.W.2d 178 (Iowa 1987)(under pertinent statutes measure of damages for wrongful execution is market value at time of the sale); *McAden v. Soil Improvement Corp.*, 394 S.W.2d 662 (Tex.Civ.App.1965)(the measure of damages for wrongful execution is actual value of the property when levy was made).

We consider the cases following the Restatement well reasoned and apply them here. If, upon reversal, judgment creditors were subject to liability for the property's fair market value, no incentive would exist for judgment debtors to file supersedeas bonds to stay proceedings pending appeal under C.R.C.P. 62(b). *See Mann v. Thompson, supra; State v. A.N.W. Seed Corp., supra.*

■ Moreover, under Colorado law a judgment is valid and binding until modified, set aside, or reversed. *McLeod v. Provident Mut. Life Ins. Co.*, 186 Colo. 234, 526 P.2d 1318 (1974); *In re Marriage of Wolford*, 789 P.2d 459 (Colo.App.1989)(a definite public interest exists in assuring the finality of civil judgments). This principle would be eroded if judgment creditors risked liability for damages exceeding return of the execution sale proceeds, which rarely constitute fair market value.

Accordingly, we conclude Western States should recover from Tuscany only the amount that Tuscany was paid as proceeds from the sheriff's sale, plus statutory interest.

The judgment discharging the liens and the attorney fees orders under § 38–35–204 are reversed, and the case is remanded for reinstatement of the mechanics' liens and for further proceedings on costs, attorney fees, and restitution consistent with this opinion.

Judge ROTHENBERG and Judge VOGT concur.